## BLACK vs. WALTON, GUARDIAN, ETC.

SALE BY GUARDIAN: *False representations as to title:*

A sale by a guardian of his ward's land under an order of the Probate Court, is a judicial sale, and the rule *caveat emptor* applies; but if the land is purchased upon the representations of the guardian that the purchaser would acquire a good title, which turn out to be untrue, the purchaser will not be held at law or in equity, although the guardian may not have known of the falsity of his representations.

APPEAL from *Monroe* Circuit Court.

Hon J. N. CYPERT, Circuit Judge.

*Hughes*, for appellant.

*Smith, contra.*

ENGLISH, CH. J.:

This was an action at law in the Circuit Court of Monroe County, brought by William J. Walton as guardian of D. P. and J. C. Stibbs, minors, against William Black, for the purchase money of lands.

The complaint alleges, in substance, "that plaintiff is the guardian of the above named minors, who are the heirs at law of Joseph C. Stibbs, deceased. That on the 19th day of February, 1876, pursuant to orders of the Monroe Probate Court, he caused to be exposed to public sale, to the highest bidder, upon a credit of six months, as the property of his said wards, the east half of section three in township three north, of range two west, containing 326.55 acres; and the northwest quarter of the northwest quarter of section four in the same township and range, containing 42.63 acres. That one W. J. Daley acted as auctioneer at said sale. That defendant bid and offered to pay for the tract first above described $489.75, and for the tract last above described $33, and, being the highest bidder, said lands were stricken off to him at the prices above mentioned. That said auctioneer then and there made the annexed memorandum writing of said sale, and signed the name of said purchaser. That defendant afterwards refused to make his note for said purchase money. That defendant was thereupon let into possession of said premises, and has continued ever since in the undisturbed possession thereof. That on the 14th day of September, 1876, at, etc., the plaintiff tendered to the defendant a sufficient deed of conveyance of the same and demanded said purchase money.

That said sale had been previously reported to said Probate Court, and had been confirmed, and the plaintiff had been authorized to execute a deed to said defendant. That defendant has not paid the aforesaid purchase money of said lands, nor any part thereof." Prayer for judgment against defendant for $522.75, with interest from the 19th of August, 1876, etc.

The defendant filed an answer in substance as follows:

"Defendant says, for answer, that at divers times before the day of sale mentioned in the plaintiff's complaint, the plaintiff represented to defendant that the land to be sold was the property of the Stibbs' estate, and by such representations lead the defendant to believe that if he purchased any of said lands at said sale he would obtain a good title thereto. That relying upon the representations of the plaintiff, at the sale, he bid the price on the lands mentioned in the complaint, as therein stated. Admits that he never executed his notes therefor, but denies that he had possession of said lands or any part thereof. He says that after bidding on the lands upon the representations of the plaintiff, and before any notes were drawn for the purchase money, or any deed or bond was drawn, or defendant let into possession of said lands, he discovered that the Stibbs' estate had no title whatever to said lands save the 42.63 acres in section four as mentioned; and that the plaintiff, as guardian of the heirs of said estate, had no right whatever to sell the same, and would convey no title thereto; but that the 326.55 acres in section three was the property of E. H. Porter, as will appear from a deed herewith filed as Exhibit A, reference being had thereto. That he, upon the discovery of said facts, refused to execute any notes, or to accept from plaintiff any deed or bond for title to said land; and denies that plaintiff, before the commencement of this suit, or at any other time, ever tendered him a sufficient deed to said lands; and if he ever tendered a deed of any kind, asks that the same, or a copy, be produced in court.

"And, further answering, says that he is now, and has been at all times, willing to pay to the plaintiff the amount due upon the land in section four whenever he will execute to defendant a sufficient deed thereto, and is now ready and offers to pay said amount in court."

The plaintiff demurred to the first paragraph of the answer, in short upon the record by consent, the court sustained the demurrer, and gave the defendant leave to amend, which he declined to do.

The cause was submitted to the court on issue to the second paragraph of the answer, and finding and judgment in favor of plaintiff for the sum of $527.75, being the amount of plaintiff's demand, including interest from the 19th of August, 1876.

The defendant appealed.

No motion for a new trial having been made in the court below, and no bill of exceptions taken, the only question presented for decision by this court, is whether the court below erred in sustaining the demurrer of appellee to the first paragraph of the answer of appellant.

A sale made by a guardian of his ward's land, under an order of the Probate Court, is a judicial sale, and, as a general rule, a purchaser at such sale acts at his peril. The guardian sells such estate only as his ward has in the land, and the purchaser must make inquiry as to the title, and the authority of the guardian to sell. The guardian makes no warranty of title for his ward, and if he covenants for title, he only binds himself personally. The rule *caveat emptor* applies to such sales. *McCurdy et al.* v. *Guynn et al., ante.*

But in this case the substance of the appellant's answer is, that he was induced to bid for the land by the false representations of the guardian that he would get a good title; and ascertaining after the sale that the wards had no title to the tract of

326.55 acres bid off by him, but that the title was in another person, and that the guardian had no right whatever to sell the land, he declined to execute his note for the sum bid by him, and did not take possession of the land. These allegations of the answer, admitted to be true by the demurrer, set up a good defense to so much of the complaint as was for the sum bid for the tract to which the allegations relate. *Rice et al.* v. *Richardson, adm'r, et al.*, 3 Ala., 428; *Ray* v. *Virgin*, 12 Ill., 216; *Atwood's Adm'r*, v. *Wright et al.*, 29 Ala., 346.

It is not averred in the answer that the representations made by appellee to appellant as to the title to the land, were fraudulently made, in other words that appellee knew them to be false when he made them.

In an action at law by a purchaser against a vendor of real or personal property for false representations as to the title, quality or quantity of the property, the plaintiff must allege and prove that the vendor knew that the representations were false when he made them. *Plant* v. *Condit*, 22 Ark., 454; *Morton* v. *Scull*, 23 Ark., 289; Benjamin on Sales, 345.

Had appellant perfected his bid for the land, and brought an action for damages against appellee for such false representations, he would have been obliged to prove that they were false, and that appellee knew them to be false and hence fraudulent when he made them.

But this is not an action by appellant against appellee for deceit in the sale, but appellee is seeking by this suit to recover of appellant a sum which he was induced to bid for the land by his false representations as to title.

The consequences to appellant were the same whether appellee knew the representations to be false or not. The case, in brief, is that appellee represented to appellant that if he would bid for the land at the sale, he would get a good title; confiding in such

representations appellant was induced to bid, but, ascertaining· them to be untrue, and that he would get no title to the land, he· refused to pay his bid.

Equity would not compel appellant to accept a worthless deed,. and pay his bid, merely on the ground that appellee did not know that the representations were false when he made them; nor will a court of law permit appellee to recover a sum of money which he induced appellant to bid for the land by such false representations, upon the excuse that he did not know them. to be false.

Whether the party misrepresenting a material fact knew it to be false, or made the representation without knowing whether it was true or false, is wholly immaterial, for the affirmation of· what one does not know or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is· known to be positively false. And even if the party innocently misrepresent a material fact, by mistake, it is equally conclusive, for it operates as a surprise and imposition on the other party,. 1 Story Equity, sec. 193; *Davis, adm'r,* v. *Heard,* 44 Miss., 58; *Wilcox* v. *Iowa Wesleyan University,* 32 Iowa, 374; *Blackman* v. *Johnson,* 35 Ala., 252; *Bennett* v. *Judson,* 21 New York, 238; *Smith et al.* v. *Mitchell,* 6 Georgia, 458; *Oswald* v. *McGehee,* 28· Miss., 351; 1 Perry on Trusts, sec. 171; *Rawle on Covenants for* *Title* (4th ed.), p. 573, and notes.

The fact that appellee was ·acting as guardian in making the· sale does not prevent the application of the rule.

If his wards had no title to the land, they will lose nothing by· his failure to recover in the action; and he should not be permit-- ted to. make money for them by obtaining an order from the· Probate Court to sell land to which they had no title,· and then inducing appellant to bid for it by representing to him that he· would get a good title.

Having charge of the property of his wards, real and personal, he would be presumed to have a better knowledge of what property they owned, and of the nature of their title than strangers. He should have acted with fairness before and at the sale, and offered to sell only such title as his wards had in the lands. Gantt's Dig., sec. 3071. He should not have represented their title to be good in order to induce bidding, unless he knew it to such. To represent that the bidder would get a good title to the land, when, in fact, as alleged by the answer, there was none in his wards, and he could convey no title whatever, was acting in bad faith, and neither a court of law or equity would aid him to be recover money on a bid induced by such representations. *Atwood's Adm'r*, v. *Wright et al.*, 29 Ala., 376, and cases above cited.

The judgment must be reversed, and the cause remanded to the court below with instructions to overrule appellee's demurrer to the first paragraph of appellant's answer, and for further proceedings, etc.